# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES A. NICHOLS, # 12793-026, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MARK S. INCH, ) <br> WARDEN B. TRUE, ) <br> MANDIE BAGWELL, ) <br> R. PASS, ) <br> and CALEB MEYERS, ) <br> ) <br> Defendants. ) | Case No. 17-cv-1263-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He alleges that Defendants were deliberately indifferent to a serious medical need. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers

1

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**<u>The Complaint</u>**

Plaintiff sustained an injury to his right ankle at some unspecified time. He asserts that he is suffering from severe and constant pain in that leg, which has become infected. (Doc. 1, pp. 5-6). According to the Complaint, Plaintiff has sought medical care and complained to prison officials about his pain and limited mobility from the ankle condition, but his requests have been ignored. (Doc. 1, pp. 6-7).

The Complaint contains few specific facts regarding Plaintiff's injury or his efforts to obtain care. Plaintiff's attached exhibits provide some additional detail. On May 29, 2017, Plaintiff submitted an "Administrative Remedy – Informal Resolution," which stated that since 2015, he had made several requests for treatment, had been to sick call numerous times, and had written to Dr. Pass (Medical Director) about the pain in his ankle. (Doc. 1, p. 11). Plaintiff requested "bone fusion surgery" to treat the pain and restore his ability to walk normally. *Id.* The counselor responded that based on Plaintiff's history of "significant infection with previous surgery to that ankle," surgery posed a high risk and was "not clinically indicated." (Doc. 1, p. 12). Instead, Plaintiff was evaluated by the physical therapist to determine a program of therapy to help with the pain.

On June 20, 2017, Plaintiff filed his BP-9 request for review by Warden True. (Doc. 1, pp. 5-6, 13). Plaintiff stated that he was in severe, unbearable pain. (Doc. 1, p. 13). He asked for a referral to an orthopedic surgeon and to physical therapy to see what could be done to remedy the pain and help him walk more normally. He said that if he loses his footing he falls because he cannot maintain his balance. On June 28, 2017, True responded, noting that Plaintiff's records showed he had an outside physical therapy consultation on November 28, 2016. The therapist diagnosed him with a "Plantar Flexion contracture," discussed a program of home exercises, and gave him a "Swedo ankle support." (Doc. 1, p. 15). On June 20, 2017, Plaintiff was re-evaluated and approved to receive an orthopedic consult, for which a date had yet to be set.

On July 10, 2017, Plaintiff further appealed, noting that the Swedo ankle support did not stop his pain, and claiming that "home exercise" could not start until after he is released from prison. The pain was preventing him from sleeping. (Doc. 1, p. 16). Plaintiff noted that he had

not been re-evaluated by the outside therapist, but instead saw the physician assistant ("PA")[1] at Marion. (Doc. 1, p. 17). The PA noted swelling of the ankle, but failed to provide Plaintiff with any medication to relieve his pain, and told Plaintiff the pain was his own fault. In addition, Plaintiff had already waited nearly 2 months for the orthopedic consultation, without any treatment to address his severe pain. *Id.* The August 11, 2017, response from the Regional Director noted that an appointment had been set for Plaintiff to see the orthopedic surgeon, but the date could not be disclosed to him for security reasons. (Doc. 1, p. 18). It also stated that Plaintiff was currently prescribed naproxen for pain management, and that he would be given a treatment plan after the orthopedic consultation.

Plaintiff's next appeal, dated August 31, 2017, noted that the naproxen had failed to relieve his pain, and medical providers had ignored his requests for more effective medication. His pain level was a "constant 10," and PA Meyers responded flippantly rather than take any steps to help Plaintiff with the pain. (Doc. 1, p. 19). Plaintiff expressed concern that he would be allowed to continue suffering until his expected November 2017 release. (Doc. 1, p. 20). On September 28, 2017, this appeal was denied. (Doc. 1, pp. 21-22). The National Inmate Appeals Administrator's response noted that Plaintiff had his orthopedic specialist evaluation on September 21, 2017, and prison officials were awaiting that doctor's report in order to develop a plan for Plaintiff's care. (Doc. 1, pp. 21-22).

In the narrative portion of the Complaint, Plaintiff claims that Inch (Director of the Bureau of Prisons), acting in his official capacity, denied Plaintiff's appeal over the delay and denial of medical care.[2] (Doc. 1, p. 5). Warden True likewise denied Plaintiff's request for administrative remedy, thus depriving him of adequate care and causing further damage to his

---

[1] Reading the Complaint as a whole, it appears that the PA mentioned in Plaintiff's appeal (Doc. 1, p. 17) is Defendant Meyers.
[2] Inch's denial of the appeal/grievance is not included with the Complaint.

4

ankle. (Doc. 1, pp. 5-6).

Bagwell (Marion Health Service Administrator) has allegedly ignored all of Plaintiff's requests for immediate medical care to prevent further injury to his ankle, and the resulting delay has caused further injury, including a severe infection. (Doc. 1, p. 6). Plaintiff has suffered from continual pain and limited mobility.

Dr. Pass allegedly delayed scheduling Plaintiff for a re-evaluation for more than 6 months after discovering Plaintiff's injury, despite Plaintiff's "constant complaints" and requests for further evaluation of his ankle. (Doc. 1, p. 7). During this delay, Plaintiff suffered the additional injury of an infection, which has made it very difficult for him to walk.

PA Meyers failed to provide Plaintiff with medical care, and his delay in care resulted in Plaintiff developing an infection and impairment of mobility, which "now requires a more intense surgery." (Doc. 1, p. 8).

The Complaint requests declaratory relief and damages. (Doc. 1, p. 10).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Bagwell, Pass, and Meyers, for denying and delaying medical care for Plaintiff's painful ankle injury and mobility impairment;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against True, for denying Plaintiff's administrative appeal seeking medical treatment;

5

**Count 3:** Eighth Amendment deliberate indifference claim against Inch, for denying Plaintiff's administrative appeal seeking medical treatment.

Count 1 shall proceed for further consideration. Counts 2 and 3 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 1 – Deliberate Indifference to Serious Medical Needs – Medical Providers**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff claims he has suffered with an ankle injury, infection, mobility impairment, and severe pain, and that at least some of these symptoms date back to 2015. These conditions satisfy the objective component of an Eighth Amendment claim. The remaining question is whether the individual Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

Plaintiff's narrative indicates that Bagwell and Pass were involved in making decisions about his medical care, including referrals to outside providers, and that Plaintiff made them aware of his symptoms and need for treatment. Plaintiff claims that Bagwell ignored all his requests for "immediate" medical care. Plaintiff saw an outside physical therapist in November 2016, but he indicates that he had been requesting treatment since some time in 2015. Plaintiff asserts that the therapist's ankle support did not help him, and implies that he was unable to do the recommended exercises.[3] More than 6 months went by before Plaintiff was approved to see an orthopedic specialist, a delay which he attributes to Dr. Pass. Plaintiff finally had the orthopedic visit on September 21, 2017. He does not disclose whether that outside doctor recommended any treatment, or whether prison officials implemented any treatment program. During the time that elapsed between the November 2016 and September 2017 consultations, Plaintiff's condition caused him considerable pain. He also states that the ankle became infected, which led to more pain and impairment.

This sequence of events suggests possible deliberate indifference by Bagwell and Pass, for the delays in referring Plaintiff to the physical therapist and orthopedic specialist, during which Plaintiff's condition worsened and he experienced ongoing pain without any effective relief. Plaintiff may therefore proceed with his claim in **Count 1** against Bagwell and Pass.

---

[3] Plaintiff does not explain why he was unable to do the suggested "home exercises" in his cell or elsewhere in the prison.

Plaintiff told PA Meyers about his severe pain, but Meyers allegedly did not give him anything to help with pain relief. Meyers may be found to be deliberately indifferent if he failed to take reasonable measures to address Plaintiff's severe pain. Therefore, the claim in **Count 1** against Meyers may also proceed.

**Dismissal of Count 2 – Warden True**

Other than the BP-9 request that he submitted on June 20, 2017, Plaintiff does not describe any communication with True regarding his symptoms or his need for medical care. In the BP-9, Plaintiff stated that he was in pain, and asked for physical therapy and a consultation with an orthopedic surgeon, in order to "eliminate or minimize the pain" from his ankle injury. (Doc. 1, p. 13). At the time True responded to Plaintiff's grievance, Plaintiff had just been approved for a consultation with an outside orthopedic specialist. (Doc. 1, p. 15). Based on that pending consultation, as well as the November 2016 physical therapy consultation where Plaintiff was given the Swedo ankle support and an exercise program, True concluded that Plaintiff had not been denied medical care and was receiving appropriate treatment. *Id.*

If a prisoner is under the care of prison medical professionals, a non-medical prison official (such as the warden) "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). In contrast, an official may be found to be deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). *See also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical

8

condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences").

In this case, True denied Plaintiff's BP-9 grievance based on records that indicated Plaintiff had been evaluated and given some treatment, and that he had an upcoming referral to a specialist for further evaluation – which would satisfy one of Plaintiff's requests in the BP-9. In that context, True's handling of Plaintiff's single briefly-stated grievance does not suggest deliberate indifference to Plaintiff's condition. Accordingly, **Count 2** against True shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 3 – Director Inch

Nothing in the Complaint suggests that BOP Director Inch was in any way responsible for making medical decisions regarding Plaintiff's treatment. Plaintiff merely alleges that Inch is "responsible for the overall operation of all prison facilities in the Bureau of Prisons," and that he was acting in his official capacity when he denied Plaintiff's administrative remedy appeal complaining about inadequate medical care. (Doc. 1, p. 5).

Plaintiff first allegation attempts to impose liability on Inch based on his authority as Director of the BOP. However, the doctrine of *respondeat superior* (supervisory liability) is not applicable in a civil rights action brought under 42 U.S.C. § 1983 or pursuant to *Bivens*. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). *See Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005) (a *Bivens* action is the federal equivalent of a § 1983 civil rights action). Plaintiff's factual narrative does not suggest that that Inch was "personally responsible for the deprivation of a constitutional right." *Sanville*, 266 F.3d at 740. Thus, he cannot be held liable for deliberate indifference to Plaintiff's condition.

Furthermore, Inch's denial of Plaintiff's administrative remedy does not amount to the

personal involvement that may lead to liability in a civil rights action. The Seventh Circuit instructs that the alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). And finally, a federal official cannot be sued in his official capacity in a *Bivens* action. A suit against a federal officer in his official capacity is a suit against the United States, *see Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987), and sovereign immunity bars a *Bivens* claim against the United States. *See Carlson v. Green*, 446 U.S. 14, 19-20 (1980).

For these reasons, **Count 3** against Inch shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNTS 2 and 3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **INCH** and **TRUE** are **DISMISSED** from this action without prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on **BAGWELL, PASS,** and **MEYERS**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **BAGWELL, PASS,** and **MEYERS** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[4] All costs of service shall be advanced by the United States, and the Clerk shall

---

[4] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law

provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

---

for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: January 10, 2018**

                                              s/J. Phil Gilbert
                                              United States District Judge